UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ANATOLY ZARKHIN, | ) | No. 12 B 38907 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| GEORGE BROQUET, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 A 1955 |
| | ) | |
| ANATOLY ZARKHIN, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

### MEMORANDUM OPINION

Before the court for ruling is the motion of defendant Anatoly Zarkhin pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. Bankr. P. 7012(b)), to dismiss the adversary complaint of plaintiff George Broquet for failure to state a claim. For the reasons that follow, the motion will be denied.

### 1. Facts

On a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the non-movant. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). The court considers not only the facts alleged but also any exhibits attached to the complaint. *See* Fed. R. Civ. P. 10(c) (made applicable by Fed. R. Bankr. P. 7010); *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 384 (7th Cir. 2010).

The complaint alleges the following facts. Broquet lives in Michigan. (Compl. ¶ 3). In February 2008, one of Broquet's acquaintances telephoned him about the possibility of investing in projects belonging to Builders Center of Chicago ("BCC"), a consortium or partnership of related businesses engaged in the development of residential real estate. (*Id.* ¶¶ 11-12).

In March 2008, Broquet traveled to Chicago where he met with Zarkhin and two other men at BCC's office to discuss the investment proposal. (*Id.* ¶ 13). Broquet was told that the three men were partners, Zarkhin was acting on behalf of all three, they were trustworthy, and the investment opportunity was worthwhile. (*Id.*). Broquet was also told his investment would be secured by a junior mortgage on certain of BCC's real estate development projects and would be repaid with interest in no more than 36 months as condominium units were sold. (*Id.* ¶ 14).

As a result of these representations, Broquet agreed to invest in the BCC projects, and on March 27, 2008, he and Zarkhin (on behalf of BCC) executed a document entitled "Letter of Intent." (*Id.* ¶ 15; Ex. A). The letter purported to "bullet point our proposal outlined in our Letter of Intent dated March 21, 2008." (*Id.* Ex. A).[1/] According to the letter, Broquet would invest $250,000. (*Id.*). The investment would be "secured by land promissory note [*sic*], approximately 2-3 months after closing takes place." (*Id.*). In return, Broquet would receive "15% on your money," 12% "if project never is built, or does not go to condo sales [*sic*]," with the principal to be repaid "no later than 36-months [*sic*]." (*Id.*). The letter told Broquet: "You are 31.25% Partner participant of the profit on our 4026 S. Ellis 11-unit new construction development ($120K minimum return) [*sic*]." (*Id.*).

Twelve days later, on April 8, 2008, Zarkhin presented Broquet with a promissory note

---

[1/]    The complaint does not mention a letter of intent dated March 21, 2008, nor is any such letter attached as an exhibit to the complaint.

and mortgage. (*Id.* ¶ 17). The note recited the promise of an entity called "4026 S. Ellis, Inc.," not BCC, to pay Broquet $250,000, and listed as "collateral property" real estate located at 4026 S. Ellis Avenue in Chicago. (*Id.* ¶ 18; Ex. B). The only interest rate shown was interest on the outstanding balance at 12%. (*Id.*). Zarkhin signed the note, presumably on behalf of 4026 S. Ellis, Inc., but the note did not identify his capacity. (*Id.*). The mortgage likewise showed 4026 S. Ellis, Inc. as the mortgagor, showed Broquet as mortgagee, and listed property at 4026 S. Ellis as the collateral securing a principal payment of $250,000. (*Id.* ¶ 18; Ex. C). As with the note, Zarkhin signed the mortgage, apparently on behalf of 4026 S. Ellis, Inc., but the mortgage did not identify the capacity in which he signed. (*Id.*).

In reliance on the representations he had been given, on May 8, 2008, Broquet wired $250,000 to an account belonging to an entity called "LPI Group, LLC," which did business under the BCC name. (*Id.* ¶¶ 6, 19, 36, 46).

Over the next few months, Broquet received only sporadic payments on the promissory note, and as of November 2008, he was still owed $200,000. (*Id.* ¶ 20). At some point, Broquet learned that the development at 4026 S. Ellis was not proceeding. (*Id.* ¶ 21). He asked for the repayment of his investment, and Zarkhin and the others agreed to repay him from the proceeds of one of BCC's other projects. (*Id.*).

To induce Broquet to refrain from taking legal action and to provide him with additional security, Zarkhin and the others also agreed to give him a new promissory note and a mortgage on a different BCC project, this one at 7400-08 S. Coles in Chicago. (*Id.* ¶¶ 23-24). The second note, dated November 25, 2008, recited the promise of Zarkhin to pay Broquet $200,000, with the principal plus 15% interest due in one year. (*Id.* Ex. D). Accompanying the note was a "Letter of Understanding" stating that the "principal" would be "protected with collateral in the

-3-

form a junior lien [*sic*] on the building at 7400-08 S. Coles, Chicago, IL" and requiring interest to be paid monthly beginning January 2009. (*Id.*). The mortgage, also dated November 25, 2008, showed Zarkhin as the mortgagor, Broquet as mortgagee, and property at 7400-08 S. Coles in Chicago as the collateral securing a principal payment of $200,000. (*Id.* ¶ 24; Ex. E). Zarkhin signed both the note and mortgage. (*Id.* ¶ 24; Exs. D, E).

Broquet received only sporadic interest payments under the new note, and in April 2009 the payments stopped altogether. (*Id.* ¶ 26). Broquet repeatedly demanded payment from Zarkhin, but Zarkhin put him off until admitting finally that he no longer had Broquet's money and did not know where it was. (*Id.* ¶ 28). In November 2010, Zarkhin sent Broquet a check for $3,500 drawn on an account belonging to an entity called "3862 Lake Park, Inc.," but when Broquet deposited the check, it was dishonored because the account had been closed. (*Id.* ¶ 29).

The representations Zarkhin made to Broquet about the security for the first note were false, and Zarkhin knew they were false when he made them. (*Id.* ¶¶ 34-35, 43-44). The entity calling itself 4026 S. Ellis, Inc. had no interest in the property at that address because there is no 4026 S. Ellis Avenue in Chicago. (*Id.* ¶¶ 31-32). The representations Zarkhin made to Broquet about the security for the second mortgage were also false, and Zarkhin knew they were false when he made them. (*Id.* ¶¶ 41, 43-44). Zarkhin had no legal interest in the 7400-08 S. Coles property which was actually owned by one of Zarkhin's associates and another entity. (*Id.* ¶¶ 38-39).

Zarkhin made these false representations intentionally to induce Broquet to invest $250,000 in Zarkhin's projects and then to refrain from taking legal action once there was a default. (*Id.* ¶ 45). Broquet relied on the false representations, first by investing the $250,000 (*id.* ¶¶ 36-37) – it was only *after* he was granted the mortgage on the 4026 S. Ellis property that

-4-

he wired the money to the LPI account (*see id.* ¶¶ 17-19; Ex. B, C) – and second by refraining from taking actions to collect the money he was still owed (*id.* ¶¶ 46-47).

In September 2012, Zarkhin filed a chapter 7 bankruptcy case. Three months later, Broquet commenced this adversary proceeding. In his complaint, Broquet alleges that Zarkhin owes him a debt nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A). Zarkhin now moves to dismiss the complaint for failure to state a claim on the principal ground that Broquet has not alleged and could not allege his justifiable reliance on Zarkhin's alleged false representations.

## 2. Discussion

The motion to dismiss will be denied. The complaint adequately alleges that Broquet justifiably relied on Zarkhin's falsehoods. In contending that Broquet has not alleged and cannot allege justifiable reliance, Zarkhin mistakenly focuses on a single provision of the March 27 letter of intent, ignoring the rest of Broquet's allegations.

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Although some courts apply a single test for determining nondischargeability under section 523(a)(2)(A), that section actually describes three separate grounds for finding a debt nondischargeable: false pretenses, false representation, and actual fraud. *Dishman v. Julian (In re Julian)*, Nos. 12-7394-RLM-7, 12-50275, 2013 WL 625346, at *3 (Bankr. S.D. Ind. Feb. 20, 2013); *Wachovia Sec., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 668 (Bankr. N.D. Ill. 2010); *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr.

N.D. Ill. 2001).

Broquet's claim is based on false representations and false pretenses. To state a claim for false representation, a creditor must allege that the debtor owes the creditor a debt resulting from a false representation or omission of fact, a representation the debtor either knew was false or made with reckless disregard for its truth. *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011); *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *Wallner v. Liebl (In re Liebl)*, 434 B.R. 529, 538 (Bankr. N.D. Ill. 2010); *Jahelka*, 442 B.R. at 668-69; *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 771 (Bankr. N.D. Ill. 2010), *aff'd*, 470 B.R. 808 (N.D. Ill. 2012). The creditor must also allege that the debtor made the representation with an intent to deceive and the creditor justifiably relied on the representation. *Ojeda*, 599 F.3d at 716-17.

To state a claim for "false pretenses," no express misrepresentation is necessary. False pretenses include "implied misrepresentations" as well as "conduct intended to create or foster a false impression." *Media House Productions, Inc. v. Amari (In re Amari)*, 483 B.R. 836, 846 (Bankr. N.D. Ill. 2012); *Hanson*, 432 B.R. at 771. Otherwise, the elements of a false pretenses claim are the same as the elements of a false representation claim, and the creditor must still allege justifiable reliance. *Easy Guy Auto Sales, Inc. v. Frisby (In re Frisby)*, Nos. 12-01989-JMC-7, 12-50173, 2013 WL 1337779, at *4 (Bankr. S.D. Ind. Mar. 29, 2013); *Vozella v. Basel-Johnson (In re Basel-Johnson)*, 366 B.R. 831, 845 (Bankr. N.D. Ill. 2007).

In *Field v. Mans*, 516 U.S. 59 (1995), the Supreme Court clarified the meaning of "justifiable reliance" for purposes of section 523(a)(2)(A). *See In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997). Although the plaintiff's reliance must be justifiable, the Court said, his conduct need not conform to the standard of the reasonable man. *Field*, 516 U.S. at 70-71. Justifiable reliance is consequently a less demanding standard than reasonable reliance., requiring only that

the creditor not "'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Ojeda*, 599 F.3d at 717 (quoting *Field*, 516 U.S. at 71).

Justifiable reliance is also a subjective standard, not an objective one. *Field*, 516 U.S. at 71; *see also Ojeda*, 599 F.3d at 717; *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002). It takes the plaintiff "as he is." *Batman v. Nice (In re Nice)*, Nos. 10-13703-AJM-7, 10-50674, 2012 WL 1029219, at *11 (Bankr. S.D. Ind. Mar. 26, 2012); *see also Field*, 516 U.S. at 71 (noting that a plaintiff's reliance is justifiable unless the facts should be apparent to "one of *his* knowledge and intelligence" (internal quotation omitted) (emphasis added)). What is justifiable thus depends on the qualities and characteristics of the particular plaintiff and the circumstances of the particular case. *Field*, 516 U.S. at 71; *Ojeda*, 599 F.3d at 717.

Here, Broquet alleges that in making his investment, he relied on the representation that the investment would be secured by a mortgage on the 4026 S. Ellis property. (Compl. ¶ 36). He also alleges that in refraining from taking legal action to collect the balance due, he relied on the representation that his investment would be secured by another mortgage, this time on the 7400-08 S. Coles property. (*Id.* ¶ 46). Both mortgages expressly represented that the mortgagors – 4026 S. Ellis, Inc. and Zarkhin – had an interest in the properties. (*Id.* Exs. C, E).[2] And implicit

---

[2] Even if the mortgages had not expressly represented that the mortgagors had an interest in the properties, the representation would have been implicit. A person cannot grant a mortgage on property in which he holds no interest. *Berg v. eHome Credit Corp.*, 848 F. Supp. 2d 841, 845 (N.D. Ill. 2012); *Tagg v. Moody*, No. 04CA2775, 2005 WL 1060566, at *4 (Ohio Ct. App. May 6, 2005); *Ladder Energy Co. v. Intrust Bank, N.A.*, 931 P.2d 83, 85 (Okla. Civ. App. 1996); *Jennings Realty Corp. v. First Nat'l Bank of N. Vernon*, 485 N.E.2d 149, 152 (Ind. Ct. App. 1985); *Wright v. Bircher*, 5 Mo. App. 322, 331 (1878); 59 C.J.S. *Mortgages* § 111 at 102-03 (2009).

in both mortgages was the further representation that the properties subject to the mortgages actually existed, since a mortgage cannot be granted on nonexistent property. *See Wright*, 5 Mo. App. at 331; 59 C.J.S., *supra*, § 110 at 102.

Nothing in the complaint or exhibits suggests that Broquet's reliance on these express and implied representations was other than justifiable. Although Broquet could not bury his head in the sand and ignore obvious falsehoods, *Jairath*, 259 B.R. at 315, there was nothing obviously false about the representations. Broquet was entitled to rely on what Zarkhin told him and had no obligation to investigate whether the prospective mortgagors actually had an interest in the properties, let alone whether the properties actually existed. *See Field*, 516 U.S. at 70 (noting that a buyer of land is justified in relying on the seller's false representation that the land is free of encumbrances even though the buyer could have "walk[ed] across the street to the office of the register of deeds" and learned the truth (internal quotation omitted)); *Taylor v. Sykes*, No. 05 C 3717, 2005 WL 3542520, at *3-4 (N.D. Ill. Dec. 22, 2005).

In contending otherwise, Zarkhin fastens on a single sentence in the March 27 letter of intent. The sentence said: "Money will be secured by land promissory note, approximately 2-3 months after closing takes place." (Compl. Ex. A). According to Zarkhin, this sentence plainly signaled to Broquet that neither Zarkhin, his associates, nor any of his business entities actually owned the 4026 S. Ellis property since a "closing" had yet to "take[ ] place." (*Id.*).

The problem with Zarkhin's argument, as Broquet points out, is that the letter of intent is not only vague but contradictory. The letter speaks of a "closing" but does not identify the property in question. The letter then goes on to proclaim Broquet a "[p]artner participant [*sic*] . . . on our 4026 S. Ellis 11-unit new construction development," suggesting not only that Zarkhin and friends held a current interest in the property but that the property existed. (*Id.*). What is

-8-

more, only nine days later 4026 S. Ellis, Inc. executed a mortgage on the property in favor of Broquet, this time representing explicitly that 4026 S. Ellis had an interest in the property and implicitly that there was such a property. (*Id.* Ex. C). Only after he was granted the mortgage did Broquet pay the $250,000. (*Id.* ¶¶ 17-19; Ex. B, C). Zarkhin's argument also ignores the other misrepresentations on which Broquet bases his claim: that Zarkhin would grant him a mortgage on the 7400-08 S. Coles property, property in which Zarkhin represented he had an interest. If there is some reason to believe Broquet's reliance on these misrepresentations was unjustifiable, Zarkhin has not explained what it could be.

Zarkhin argues in his reply that Broquet has alleged no more than promissory fraud – the failure to perform a contractual promise, in other words – which is not actionable as fraud without an allegation that the promisor never had any intent to perform. (Reply at 6); *see Chriswell v. Alomari (In re Alomari)*, 486 B.R. 904, 911-12 (Bankr. N.D. Ill. 2013) (discussing this principle). Zarkhin also contends that "post-funding" allegations such as his later misrepresentation concerning the 7400-08 S. Coles property are irrelevant to Broquet's claim because "[s]ubsequent conduct" merely "illuminate[s] the debtor's behavior at the time the debt was incurred." (Reply at 8).

Zarkhin makes both of these arguments for the first time in his reply, and so both are waived. *Fogel v. Linnemann (In re Mission Bay Ski & Bike, Inc.)*, Nos. 07 B 20870, 08 A 55, 2009 WL 2913438, at *8 (Bankr. N.D. Ill. Sept. 9, 2009). But neither has merit in any event. Broquet's allegation that he was not only promised, but later purportedly granted, a mortgage on property Zarkhin knew did not exist supports an inference that Zarkhin never had any intent to perform. As for Zarkhin's later misrepresentation that Broquet would be granted a mortgage on the 7400-08 S. Coles property, that misrepresentation has nothing to do with the claim

-9-

concerning the 4026 S. Ellis mortgage. Broquet alleges that Zarkhin's later misrepresentation induced him to forbear taking legal action to collect the original debt. As such, the misrepresentation gave rise to a *new* debt and a *separate* section 523(a)(2)(A) claim. *See Ojeda*, 599 F.3d at 718-19 (holding that "a fraudulently induced forbearance" constitutes an actionable "extension or renewal of credit" nondischargeable under section 523(a)(2)(A)).

There are admittedly many aspects to the transactions here that give one pause and raise questions about what Broquet could have been thinking. Broquet invested $250,000, a considerable sum, seemingly without knowing precisely to whom he was lending the money or even with whom he was dealing. Zarkhin and his compatriots did business through a hodgepodge of corporations and limited liability companies (Compl. ¶¶ 5-6), and the March 27 letter of intent was written on BCC letterhead (*id.* Ex. A). But the letter of intent referred only to the amount Broquet was "investing." (*Id.*). It did not identify the entity in which he was investing or the borrower of Broquet's money. (*Id.*). The letter similarly went on to declare Broquet a "partner" in some sort of enterprise but did not name the enterprise. (*Id.*).

The documentation of Broquet's transactions was also remarkably inadequate. The March 27 letter of intent said that Broquet's investment would be "secured by land promissory note [*sic*]" (*id.*), but promissory notes do not create security interests, and there is no such thing as a "land promissory note." Broquet does not allege that he later signed a formal contract, and whether the letter of intent itself constitutes an enforceable contract is unclear. *See Quake Constr., Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288, 565 N.E.2d 990, 994 (1990) (noting that letters of intent are sometimes but not always enforceable contracts). As for the two mortgages Broquet received, neither contains a clause that actually grants Broquet anything. (Compl. Exs. C, E). The requisite phrase is missing from the second paragraph in each. (*Id.*).

-10-

No reasonable person would have put $250,000 on the line without exercising greater care.

A person's reliance can be justifiable, however, even when it is "unreasonable and negligent," straining "the credulity of a reasonable person." *Giovanni v. Grayson, Kubli & Hoffman, P.C. (In re Giovanni)*, 324 B.R. 586, 594 (E.D. Va. 2005). The justifiable reliance question is also a "fact intensive" question that "takes into consideration the unique circumstances of each case." *Universal Bank v. Stephens (In re Stephens)*, 302 B.R. 218, 226 (Bankr. N.D. Ohio 2003). Given the question's factual nature and the "relatively low bar the creditor must clear," *Lamar, Archer & Cofrin, LLP v. Appling (In re Appling)*, Nos. 13-30083-JPS, 13-3042, 2013 WL 5310160, at *6 (Bankr. M.D. Ga. Sept. 20, 2013), the decision whether a creditor's reliance was justifiable is not generally one that can be decided on a motion to dismiss and is usually best left for trial, *see Miller v. Greenwich Capital Fin. Prods., Inc. (In re American Bus. Fin. Servs., Inc.)*, 384 B.R. 80, 90 (Bankr. D. Del. 2008) (discussing common law fraud). Perhaps Broquet's reliance will turn out to have been unjustifiable, but that determination must await further factual development. Enough has been alleged to allow the matter to proceed.

Zarkhin makes one last argument, this one designed to escape the justifiable reliance standard under section 523(a)(2)(A). He suggests that the promissory notes and mortgages were statements "respecting the debtor's or an insider's financial condition" under section 523(a)(2)(B), bringing into play the more stringent "reasonable reliance" standard under that section. *See* 11 U.S.C. § 523(a)(2)(B)(iii).

Zarkhin supplies no authority or analysis in his opening memorandum to support his argument, doing so only in his reply, but there is no reason to believe that a promissory note or mortgage is a statement of anyone's "financial condition." Courts are split on what constitutes a "statement respecting . . . financial condition" for purposes of section 523(a)(2)(B), and the

Seventh Circuit has yet to address the question. *See Stelmokas v. Kodzius*, 460 F. App'x 600, 603-04 (7th Cir. 2012) (making these observations). The majority of bankruptcy courts in this circuit, however, construe the phrase narrowly to mean "a picture about the debtor's *overall* financial health." *Id.* at 603 (emphasis in original); *see e.g., Alford v. Cassel (In re Cassel)*, 322 B.R. 363, 374 (Bankr. C.D. Ill. 2005). The narrow interpretation is the better one. *See generally Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 711-14 (10th Cir. 2005) (analyzing the question in detail). Promissory notes and mortgages say nothing about the overall financial health of the parties to them, and the notes and mortgages here are no exception. The single decision Zarkhin cites, *Rutili v. O'Neill (O'Neill)*, 468 B.R. 308 (Bankr N.D. Ill. 2012), merely notes the conflicting decisions and declines to address the issue. *Id.* at 344-45.

Because Broquet has adequately alleged his justifiable reliance on Zarkhin's express and implied representations, and because the representations did not involve the financial condition of Zarkhin or an insider, the complaint states a claim under section 523(a)(2)(A). Zarkhin's motion to dismiss will be denied.

### 3. Conclusion

For these reasons, the motion of defendant Anatoly Zarkhin to dismiss the adversary complaint of plaintiff George Broquet for failure to state a claim is denied. A separate order will be entered in accordance with this opinion.

Dated: October 10, 2013

_____
A. Benjamin Goldgar
United States Bankruptcy Judge